IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ALEX SUAREZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:15-CV-278 |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff Alex Suarez brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

Plaintiff filled an application for Disability Insurance Benefits on March 8, 2012, alleging a disability onset date of December 1, 2011. (Tr. 120). Plaintiff's claim was denied initially and on rehearing, and plaintiff requested a hearing. (Tr. 55–58, 63–67). A hearing was held on March 21, 2014, before Administrative Law Judge Lantz McClain. (Tr. 26–45). The ALJ issued an unfavorable decision on April 25, 2014, finding plaintiff not disabled. (Tr. 10–21). The ALJ found plaintiff had the following severe impairments: mild degenerative disc disease of the cervical spine; mild peripheral

neuropathy; status post, left shoulder surgery; history of knee pain. (Tr. 12). He determined none of plaintiff's impairments met or equaled the severity of a listed impairment. (Tr. 13). The ALJ next evaluated plaintiff's RFC, reaching the conclusion he was able to perform "light work as defined by 20 CFR 404.1567(b) with the following limitations. The claimant is able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. The claimant is only occasionally able to climb such things as ramps or stairs, kneel, crouch, or crawl. He is frequently able to balance or stoop, and he needs to avoid work above shoulder level." (*Id.*). The ALJ found he was able to perform his past relevant work as a mail clerk, DOT Code 209.687-026, unskilled work (SVP of 2) at the light level of exertion. (Tr. 20).

Upon the Appeals Council's denial of plaintiff's request for review on July 20, 2015, the ALJ's determination that plaintiff was not under a disability during the relevant time period became the final decision of the Commissioner. (Tr. 1). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

The medical record shows the following:

High Plains Clinic treated plaintiff from January 14, 2010 to March 8, 2010. (Tr. 198–204). Plaintiff saw providers John C. Turner, MD and Robert A. Murphy, PA-C. Robert Murphy prescribed plaintiff with pain medications. Plaintiff presented with complaints of back pain, neck pain, chest wall pain, shoulder pain, and increased cholesterol.

Marc Henson, MD, at Panhandle Family Medicine Specialists, treated plaintiff from March 25, 2010 to August 23, 2011. (Tr. 188–96). He was treated primarily for back and neck pain, left shoulder pain, and right knee pain. (*Id.*). He was also diagnosed with cervical degenerative disc disease and peripheral neuropathy. (*Id.*). At some point, Dr. Henson referred plaintiff to Victor Taylor, MD, who

saw plaintiff and continued prescribing plaintiff's pain medications.

Dr. Taylor diagnosed him with peripheral neuropathy, in addition to cervical spondylosis with arthritis and some diffuse degenerative changes in the cervical spine. (*Id.*). Plaintiff had a diffuse sensory deficit to light touch in lower extremities but a normal circulatory response for capillary refill and good dorsalis pedis and posterior tibial pulses. (*Id.*). Plaintiff had 2+ symmetric reflexes in both lower and upper extremities and 5/5 muscle strength. (*Id.*). Dr. Taylor's plan was to schedule a bilateral lumbar sympathetic block and if approved by his insurance, do an RF nuerotomy of those areas. (*Id.*). If not, a spinal cord stimulator would be considered. (*Id.*).

Much of plaintiff's primary care occurred through the Veterans Affairs (VA) clinic. On October 18, 2011, x-rays of the cervical spine were performed that indicated moderate disc space narrowing with moderate marginal spurring anteriorly. (Tr. 211). The impression was degenerative changes without fracture, spondylolisthesis, or evidence of spondylolysis. (*Id.*). Bilateral shoulder x-rays were performed that showed only a calcific density but no other abnormalities, including no fracture, dislocation, or subluxation. (Tr. 212). A lumbar-sacral spine x-ray was also performed that showed only minor abnormalities: There were mild degenerative end plate changes at the upper lumbar spine as well as at the L5 inferior end plate with associated mild to moderate intervertebral disc space narrowing. (Tr. 210). The impression was mild degenerative changes without fracture, spondylolisthesis, or evidence of spondylolysis.

Plaintiff had several x-rays of his knees performed at the VA clinic. On July 7, 2011, bilateral knee x-rays showed no abnormalities, and on March 16, 2013, a left-knee x-ray also showed no abnormality. (Tr. 215, 233). On July 13, 2013, weight-bearing bilateral knee x-rays were performed that showed mild right knee osteoarthritis involving predominantly the patellofemoral joint and an unremarkable left knee. (Tr. 662–63).

An EMG was performed on February 15, 2012, as a result of plaintiff complaining of painful, burning feet for the last eight years. (Tr. 234). A normal study resulted, with a "clinical picture consistent with small fiber peripheral neuropathy." (*Id.*).

On March 20, 2012, the VA occupational therapy records show plaintiff presented with complaints of left shoulder pain after having worked in his yard. (Tr. 235–36). Examination demonstrated a full functional range of motion and good strength of bilateral shoulders, though plaintiff stated he felt pain in certain positions. (*Id.*). It was noted that patient was independent with activities of daily living. (*Id.*). He was educated about a home program of stretches, strengthening exercises, and pain management. (*Id.*).

On April 9, 2012, plaintiff saw Rush A. Snyder, Jr., MD, a neurologist at the VA, who performed a neurological examination that was intact except for some diminished sensation. (Tr. 443). He diagnosed plaintiff with small fiber peripheral neuropathy and made a plan to apply for a fentanyl patch for plaintiff. (*Id.*).

Dennis P. Plummer, MD, saw plaintiff on January 3, 2013, when plaintiff reported pain in left sacroiliac joint, left hip, left groin, and left thigh. (Tr. 548–50). He also experienced tingling in both feet that morning accompanied by swelling. (*Id.*). Dr. Plummer found plaintiff had tenderness at the sacroiliac joint, the gluteal area, the trochanter, and the left groin, sharp pain over the left thigh and knee, and paresthesias of both feet. (*Id.*). Plaintiff did show sensitivity to monofilament over the feet as compared to the hands. (*Id.*).

Physical therapy notes from April 10, 2013 indicated Plaintiff had fair rehabilitation potential due to the length of time since pain started in his neck and knees and due to his sedentary life. (Tr. 723–24). Examination revealed slight weakness in the cervical spine (3/5) and in the hips and elbows (both 4/5) with pain on neck range of motion and a somewhat reduced range of motion of the

shoulders. (*Id.*). Plaintiff stated he was going to request a change of primary care providers after Dr. Plummer indicated at a March 15, 2013 visit, that he was going to begin tapering off Plaintiff's pain medication. (*Id.*).

A January 29, 2014 primary care note written by Bennie Chavez, MD, indicates that plaintiff's diagnoses at that time include: (1) chronic pain syndrome with degenerative disk disease, especially involving the thoracic and lumbar spines, also with generalized osteoarthritis involving multiple joints; (2) evidence of peripheral neuropathy without adequate benefit of gabapentin, and (3) depression and some anxiety. (Tr. 772–74). Medical notes further show plaintiff was considering filing for Social Security disabilty and the treatment plan states, among other things, "Given his level of training and education, he realistically cannot go back to the type of work that he has done in the past." (*Id.*).

In addition to his primary care, on May 16, 2012, plaintiff saw Grace Stringfellow, MD, for a consultative examination. (Tr. 266–70). Dr. Stringfellow noted a history of polyneuropathy with chronic pain involving his hands and feet, cervical pain, left greater than right shoulder pain, and back and hip pain. She opined that he would be limited to sedentary to light work with limited standing and limited overhead work. (*Id.*). She did not provide any specific limitations.

Plaintiff has also had several consultations in addition to his primary care. On February 15, 2011, a Compensation and Pension Exam was conducted by VA physician, Ronny Abraham, MD. (Tr. 249–54). Dr. Abraham found the following limitations: (1) Standing Limitations: Able to stand 3–8 hours with only short rest periods; (2) Functional Limitations on Walking: Able to walk more than 1/4 mile but < 1 mile; (3) Assistive Devices/Aids: Brace. (*Id.*).

On June 18, 2012, Randal Reid, MD, a State Agency medical consultant performed a Physical Residual Functional Capacity Assessment. (Tr. 275–82). He found the following exertional limitations: (1) Occasionally lift and/or carry 20 pounds; (2) Frequently lift and/or carry 10 pounds;

(3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; (4) Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; (5) Push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 276). Additionally, the following postural limitations were found: plaintiff could occasionally climb ramps/stairs or ladder/rope/scaffolds, kneel, crouch, or crawl, and frequently balance or stoop. (Tr. 277). On October 2, 2012, a follow up Case Assessment was done in which Laurence Ligon, MD adopted the initial RFC assessment. (Tr. 510).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon*

*v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

### III.
### ISSUES

Plaintiff raises one ground for reversal of the acting Commissioner's decision denying plaintiff Social Security disability benefits:

1. The Commissioner erred in determining that ALEX SUAREZ could return to his past relevant work as a mail clerk.

### IV.
### MERITS

*A. Plaintiff's Ability to Return to Past Relevant Work*

The ALJ made a determination that plaintiff could return to his past relevant work as a mail clerk. (Tr. 20–21). Plaintiff argues that the ALJ did not make specific findings to support his conclusion that plaintiff could return to past relevant work. Pl.'s Br. in Supp., ECF No. 18 at 7–11. He cites Social Security Ruling 82-62 for the proposition that the ALJ cannot conclude, without rationale, that a claimant can perform his past work. (*Id.* at 8).

The ALJ noted plaintiff's detailed testimony about his past work as a postal clerk and that the vocational expert also testified about and described this past relevant work. (Tr. 20). He noted the vocational expert's testimony that an individual with claimant's age, education, vocational

history, and RFC would be able to perform his past relevant work as a mail clerk. (*Id.*). The ALJ's opinion states that plaintiff testified that a "central part of the job was working sorting mail that came in through the cubbyhole from the carriers or that would not go through the machine. He did this type of work with the postal service for five years after he had surgery on his left rotator cuff. . . . When he was sorting letters, he was sitting down and he was unable to work above his shoulders because this hurt his neck too much." (*Id.*). In the hearing, plaintiff testified he was not required to work above his shoulder, and a coworker handled the cubbyholes above shoulder level. (Tr. 36, 38).

The ALJ stated the vocational expert noted no discrepancy between the job as actually and generally performed. (*Id.*). The VE also testified that the job of mail clerk was classified as being at the light exertional level and was unskilled in nature. (Tr. 42). The ALJ concluded, "After hearing the claimant's testimony, and reviewing the work history and the earning record, the undersigned concurs with the testimony of the vocational expert that the claimant is able to perform past relevant work as a mail clerk, as actually and generally performed." (*Id.*).

The ALJ's decision that plaintiff could return to past relevant work was supported by the testimony of plaintiff and the VE, as well as the medical records used to determine the RFC. The ALJ properly complied with SSR 82-62 in making his findings at Step Four.

### B. *The RFC Determination*

Next, plaintiff claims the ALJ did not make a meaningful evaluation of Mr. Suarez's RFC in making his determination plaintiff can perform work at the "light" exertional level.

The ALJ determined plaintiff was able to perform "light work as defined by 20 CFR 404.1567(b) with the following limitations. The claimant is able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least six hours in an

eight-hour workday, and sit at least six hours in an eight-hour workday. The claimant is only occasionally able to climb such things as ramp or stairs, kneel, crouch, or crawl. He is only frequently able to balance or stoop, and he needs to avoid work above shoulder level." (Tr. 13). The ALJ found he was able to perform his past relevant work as a mail clerk, DOT Code 209.687-026, unskilled work (SVP of 2) at the light level of exertion. (Tr. 20).

Plaintiff's only arguments that the ALJ's RFC determination was incorrect are (1) "light" work requires an individual to "**stand and walk** during **most** of the workday."; and (2) if he were limited to sedentary work, the Medical-Vocational Guidelines would direct a finding of "disabled." Pl.'s Br. in Supp., ECF No. 18, at 10–11 (emphasis in original). Plaintiff cites his testimony that he "has trouble standing or sitting for long without pain symptoms or swelling." (*Id.* at 10) (internal citations omitted). He also cites to (1) an examination in April 2013 showing an overall decrease in the strength of his hips, hands, and neck; (2) January 2014 x-rays showing straightening of the normal lordotic curvature with narrowing of the L1-L2 disc space; and (3) his diagnosis as suffering from "chronic pain syndrome with degenerative disc disease especially involving the thoracic and lumbar spines, also with generalized osteoarthritis involving multiple joints" and evidence of "peripheral neuropathy without adequate benefit from gabapentin." *Id.* at 10–11.

Plaintiff does not cite any opinion by a treating physician that provides functional limitations that contradict the RFC determination. Instead, he cites to various diagnoses and his subjective testimony of his limitations.

The ALJ relied on the functional limitations detailed in the opinions of Ronny Abraham, MD, who conducted an examination for the Veterans Affairs Administration, and found that plaintiff could stand for three to eight hours per day with only short rest periods and could walk

more than one-quarter of a mile but less than a mile, and the State Agency Physicians who opined the plaintiff could work with the following restrictions that result in a classification of light work: (1) Occasionally lift and/or carry 20 pounds; (2) Frequently lift and/or carry 10 pounds; (3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; (4) Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; (5) Push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 276). Additionally, the following postural limitations were found: plaintiff could occasionally climb ramps/stairs or ladder/rope/scaffolds, kneel, crouch, or crawl, and frequently balance or stoop. (Tr. 277). (Tr. 249–54, 275–82, 510–11).

In arriving at the RFC determination, the ALJ devoted over six pages explaining his decision, much of which detailed plaintiff's medical records as related to the RFC and plaintiff's testimony. Subjective evidence need not take precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378 (5th Cir. 1988). The ALJ considered plaintiff's testimony and found his medically determinable impairments could be reasonably expected to cause the alleged symptoms, but that the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision. (Tr. 14). Plaintiff has not attacked the ALJ's credibility determination and it is sufficiently supported and explained in the decision. *See Harrison v. Colvin*, No. 3:13-cv-2851, 2014 WL 982843, *8 (N.D. Tex. March 12, 2014) (stating credibility determinations are generally left to the discretion of the ALJ, and this Court will not disturb the ALJ's credibility finding unless they are impermissibly vague or unsupported by the record.). Further, a diagnosis is not a functional limitation. *Dise v. Colvin*, 630 F. App'x 322 (5th Cir. 2015). The note written by Dr. Chavez stating, "Given his level of training and education, he realistically cannot go back to the type of work that he has done in the

past," does not provide any specific functional limitations, and the ALJ is not bound by a treating physician's opinion that a claimant cannot return to their past work when the weight of the medical evidence and the functional assessments contained in the record support the ALJ's RFC determination. *See* 20 C.F.R. § 404.1527 (stating opinions from medical sources that a claimant is "disabled" or "unable to work" are "opinions on issues reserved to the Commissioner because they are administrative findings dispositive of a case" and are "not treated as medical opinions as described in paragraph (a)(2)."). Plaintiff has offered nothing to contradict the ALJ's RFC determination, which was supported by the functional limitation assessments performed by Dr. Abraham and the State Agency Physicians.

There is little doubt from the records and testimony that plaintiff experiences pain, but the presence of pain is not always disabling. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (mild or moderate pain will not render a claimant disabled); *Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir. 1987) ("While pain can be a disabling condition, not all pain is disabling. [Plaintiff's] allegations of pain are to be evaluated against the other evidence in the record.") (internal citations omitted).

To the extent the plaintiff is asking this Court to decide the case differently than the ALJ did, such relief is not available. This Court's role is limited to determining whether substantial evidence exists in the record to support the Commissioner's factual findings and whether any errors of law were made. *See Anderson*, 887 F.2d at 633.

Since substantial evidence supports the ALJ's RFC. The undersigned recommends the case be AFFIRMED.

V.
RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff ALEX SUAREZ not disabled and not entitled to a period of disability benefits be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___8th___ day of March 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. Petitioner. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. Petitioner. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. Petitioner. 72(b)(2); *see also* Fed. R. Civ. Petitioner. 6(defendant).

Any such objections shall be made in a written pleading entitled "Objections to the Report

and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).